IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CYRUS M. SMITH, *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-10-782-D |
| | ) | |
| BOARD OF COUNTY COMMISSIONERS | ) | |
| OF OKLAHOMA COUNTY, *et al.*, | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION AND ORDER

This is a consolidated action brought by eight former employees of Oklahoma County, Oklahoma, alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*., civil rights violations under 42 U.S.C. § 1983, as well as various state law tort claims. By previous Orders [Dkt. # 40, 41], this Court granted Defendant Board of County Commissioners of Oklahoma County (the "County") and Defendant District 2 Oklahoma County Commissioner Brian Maughan ("Maughan") dismissal of Plaintiffs' section 1983 claims. Pursuant to Fed. R. Civ. P. 56(a), Defendants now move this Court for summary judgment [Dkt. # 88, 89] on Plaintiffs' remaining claims. The Motions are fully briefed and the issues are ripe for adjudication. For the reasons set forth herein, summary judgment is granted in part and denied in part.

## I. Background

The following facts are uncontested, except where noted.  Plaintiffs Cyrus Smith, David Blount, Melvin Ballard, Donnie Roper, Reginald Coulter, Steven Pattillo, Danny Lee Chitwood, and Don Segura ("Plaintiffs") are former employees of Oklahoma County District 2 who are all over forty years of age.  *See* County's Resp. to Pl.'s Req. for Admis. ("County Admis."), Ex. 1 to Pl.'s Mem. in Resp. to County's Mot. for Summ. J. ("Pl.'s County Resp.") at 2.  They seek to recover damages for alleged discrimination surrounding the termination of their employment in 2009 amid public accusations of wrongdoing.  Am. Compl. ¶ 8. Plaintiffs allege that their terminations were the product of age discrimination by Commissioner Brian Maughan with the assistance of his chief deputy, Steve Satterwhite ("Satterwhite"), and the County's Director of Human Resources, Dan Matthews ("Matthews").  Am. Compl. ¶¶ 17-18.  Maughan took office as a County Commissioner for Oklahoma County District 2 on January 2, 2009.  *See* Dep. of Brian Maughan ("Maughan Dep."), Ex. 5 to Pl.'s County Resp. at 2.  In his capacity as County Commissioner, Maughan has the final authority in employment decisions for District 2 employees, including terminations.  *Id*. at 45.

### A. The Termination Decision

On August 19, 2009, Maughan received a phone call informing him that County dump trucks had made use of a private roadway to access and dump dirt on private property, allegedly causing damage to the roadway.  Maughan's Statement of Undisputed Material Facts ("Maughan's SMF") ¶ 2. Maughan dispatched Myles Davidson ("Davidson"), another

District 2 employee, to investigate the claim. *Id.* ¶ 3. Davidson confirmed that County dump trucks were dumping excavated dirt on private property owned by Daniel Beal ("Beal"), also a County employee. *Id.* ¶ 4. Beal's property is located outside of Oklahoma County. Aff. of Myles Davidson ("Davidson Aff."), Ex. 27 to County's Mem. in Supp. of its Mot. for Summ. J. ("County's Mem.") at 2. Davidson related this information to Maughan who contacted Assistant District Attorney John Jacobsen and the Oklahoma County Sheriff's Office. Maughan Dep., Ex. 5 to Pl.'s County Resp. at 55-56; Maughan's SMF ¶¶ 6, 8. Maughan sought a formal investigation of the matter, explaining to the Sheriff's Office that "it is illegal to take a County vehicle out of the County in order to discard the contents of that vehicle: example would be to dump dirt on someone's property out of the County." Oklahoma County Sheriff's Office Special Investigation Report ("Sheriff's Report"), Ex. 24 to Pl.'s County Resp. at 2.

The Sheriff's Office conducted an investigation into the August 19, 2009 incident as well as into other past incidents where dirt was dumped on property outside of Oklahoma County. Maughan's SMF ¶¶ 9-10. During the course of the Sheriff's investigation, each Plaintiff was interviewed and all were identified as having either used County equipment to dump dirt on private property outside of Oklahoma County, or to have personally received dirt on their own property, or to have otherwise been involved in the dumping of dirt on property owned by a County employee, at some time during their employment with the County. *Id.* ¶ 11. Subsequently, each Plaintiff was placed on suspension. *Id.* ¶ 8. Plaintiff Segura opted to retire on September 16, 2009. Dep. of Don Segura ("Segura Dep."), Ex. 6

to Pl.'s County Resp. at 83, 90.  The remaining Plaintiffs were terminated on October 1, 2009.  Maughan's SMF ¶ 12; *see* County Admis., Ex. 1 to Pl.'s County Resp. at 2-3. Maughan claims that, based on the Plaintiffs' admissions to the Sheriff, he decided to terminate each of them for "the misuse of County property on County time" in violation of Section 3, Clause 1 of the Oklahoma County Handbook, which provides that: "County vehicles and equipment are to be used for official County business only."  *Id.*

Plaintiffs timely submitted Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), asserting that Maughan's stated basis for terminating their employment was merely pretext for age discrimination in violation of the ADEA.  Am. Compl. ¶¶ 6, 8.  Plaintiffs deny that their actions were in violation of County policy, and further allege that the County has a longstanding practice of permitting County dirt to be dumped on private property, including on property owned by County employees.  OESC Tr. of Reginal Coulter ("Coulter Tr."), Ex. 16 to Pl.'s County Resp. at 24; OESC Tr. of Steven Pattillo ("Pattillo Tr."), Ex. 17 to Pl.'s County Resp. at 16-18.  Defendants do not dispute that the County has entered into temporary easement agreements with property owners so as to permit the dumping of County dirt on private property.  Maughan Dep., Ex 5 to Pl.'s County Resp. at 91-92.

Moreover, Plaintiffs allege that Maughan surreptitiously "embarked on a campaign to discriminate against, harass, and defame the older employees of Oklahoma County District 2 because of their age."  Am. Compl. ¶ 18.  Plaintiffs identify several occasions where Maughan allegedly "revealed his . . . discriminatory animus" toward older workers through

4

ageist comments and the manufacture of false accusations that Plaintiffs had misused County equipment and resources. *Id.* ¶¶ 18, 22, 26. Specifically, the First Amended Complaint sets forth allegations that Maughan demanded that Plaintiff Ballard retire because "we have got to get some younger employees" since the older employees "are going to get to a point where they will not be able to do any work"; expressed to Plaintiff Coulter that he "wanted to hire younger employees"; and asked when Plaintiff Blount planned to retire. *Id.* ¶¶ 22-25. Plaintiffs further allege that Maughan falsely attributed wrongdoing and criminal activity to them in connection with their employment and then disseminated these accusations to the Oklahoma County Sheriff's Office as well as to the media. *Id.* ¶¶ 43-44. After their discharge, Plaintiffs allege that Maughan released their names to the media and knowingly published false statements that the terminations were prompted by "some extreme cases of massive abuse." *Id.* ¶¶ 47, 49.

Since Plaintiffs' terminations, Maughan has filled ten road crew positions, with forty percent of the new hires being under forty years of age, and five non-road crew positions, with eighty percent of the new hires being under forty years of age. *See* Chart of New Hires, Ex. 28 to Pl.'s County Resp. at 1; Maughan Dep., Ex. 5 to Pl.'s County Resp. at 148-152.

### B. This Action

Plaintiffs[1] filed their First Amended Complaint on September 15, 2010, asserting six causes of actions as to various of the Defendants: Count I alleges age discrimination under the ADEA and is against the County; Count II alleges wrongful discharge in violation of Oklahoma public policy prohibiting age discrimination and is against the County; Count III alleges intentional infliction of emotional distress and is against Defendants Maughan, Satterwhite, and Matthews, individually; Count IV alleges defamation and is against the County and Maughan individually; Count V alleges violations of Plaintiffs' civil rights under 42 U.S.C. § 1983 and is against the County and Maughan individually; and Count VI alleges civil conspiracy and is against Defendants Maughan, Satterwhite, and Matthews, individually. By Orders dated June 6, 2011 [Dkt. # 40], and August 1, 2011 [Dkt. # 41], this Court granted in part and denied in part two motions to dismiss directed at Plaintiffs' First Amended Complaint. Subsequently, Plaintiffs dismissed all counts against Defendants Satterwhite and Matthews [Dkt. # 81]. The County and Maughan now move for summary judgment on the remaining claims [Dkt. # 88, 89].[2]

---

[1] This is a consolidated action. The First Amended Complaint was filed after the consolidation of Plaintiff Smith's action with the separately filed actions of Plaintiffs Blount, Ballard, Roper, Coulter, Pattillo, and Chitwood (Case Nos. CIV-10-783-D: CIV-10-784-D; CIV-10-785-D; CIV-10-786-D; CIV-10-787-D; and CIV-10-788-D). Plaintiff Segura's action was consolidated thereafter. *See Segura v. Brd. of Cnty. Comm'rs*, Case No. CIV-10-1375-D, Order (W.D. Okla. May 10, 2011).

[2] Defendants have sought summary judgment as to all claims, except that the County has not sought summary judgment as to Plaintiffs' disparate impact ADEA claim. Accordingly, that claim will proceed. *See infra* Part III(A)(1) n.3 of this Order.

## II. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party." *Id.* at 255. Judgment as a matter of law is appropriate, therefore, when "the nonmoving party has failed to make a sufficient showing on an essential element of his or her case with respect to which he or she has the burden of proof." *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). When applying this standard, all facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Fowler v. United States*, 647 F.3d 1232, 1237 (10th Cir. 2011). If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp.*, 477 U.S. at 322.

The movant bears the burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex Corp.*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex Corp.*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*,

144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The Court need not consider only cited materials, but may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## III. Analysis

### A. Age Discrimination Against the County

Plaintiffs allege that they were discriminated against on account of their age in violation of the ADEA as well as in violation of Oklahoma public policy, the latter claim being cognizable under *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989). The County moves for summary judgment on both counts, and the Court addresses the County's arguments in turn.

### 1. Plaintiffs' Disparate Treatment ADEA Claim[3]

The County argues that it is entitled to summary judgment on Plaintiffs' disparate treatment ADEA claim because "Plaintiffs cannot make out a prima facie case under the

---

[3] As noted above, the County has sought summary judgment as to Plaintiffs' disparate treatment ADEA claim, but not as to Plaintiffs' disparate impact ADEA claim. As such, that claim will proceed. *See Smith v. City of Jackson*, 544 U.S. 228 (recognizing that an ADEA plaintiff may proceed on a disparate impact theory of recovery).

ADEA . . . because Plaintiffs cannot establish causation"; and that even if Plaintiffs have satisfied the prima facie case requirement, summary judgment is nevertheless appropriate because the County has a legitimate, non-discriminatory reason for terminating Plaintiffs' employment that was not pretext for age discrimination. County's Mem. at 11, 14.  Plaintiffs assert that summary judgment should be denied because they have presented direct evidence of discrimination, thus obviating the need to make out a prima facie case of age discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); and to the extent that their evidence is merely circumstantial, they have satisfied the *McDonnell Douglas* prima facie case requirements and have demonstrated that there is a genuine dispute of material fact surrounding whether the County's proffered reason for terminating Plaintiffs was in fact pretext.  Pl.'s County Resp. at 28-33.

The ADEA prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment *because of* such individual's age."  *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1277 (10th Cir. 2010) (emphasis in original); *see* 29 U.S.C. § 623(a)(1).  For purposes of the ADEA, the phrase "because of" means that "age was the 'reason' that the employer decided to act," such that "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).  However, the Tenth Circuit has clarified that "this casual standard does not require [plaintiffs] to show that age was the sole motivating factor in the employment decision." *Jones*, 617 F.3d at 1277 (internal quotation marks and citations omitted).  "Instead, an employer may be held liable under the ADEA if

9

other factors contributed to its taking an adverse action, so long as age was the factor that made a difference." *Id*. (internal quotation marks and citations omitted).

To defeat a motion for summary judgment on an ADEA claim, a plaintiff may either present direct evidence of age discrimination, *see Trans World Airlines, Inc., v. Thurston*, 469 U.S. 111, 121 (1985), or when direct evidence is unavailable, a plaintiff may present circumstantial evidence in accordance with the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonell Douglas*, a plaintiff must first demonstrate a prima facie case of unlawful discrimination. 411 U.S. at 802. To do so, an ADEA plaintiff must show: (1) he is within the protected age group; (2) he was doing satisfactory work; (3) he suffered an adverse employment action; and (4) he was treated less favorably than others not in the protected class. *See Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1997); *see also Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005) (holding that the "fourth element of a prima facie case is a flexible one that can be satisfied differently in varying scenarios" such as by being "replaced by a younger person"). If a plaintiff succeeds at the first stage, the burden of production shifts to the employer to identify a legitimate, nondiscriminatory reason for the adverse employment actions. *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1064 (10th Cir. 2009). Once the employer advances such a reason, the burden shifts back to the plaintiff to prove the employer's proffered reason was pretextual. *Id.*

Preliminarily, the Court finds that Plaintiffs' proffered evidence is not direct evidence of age discrimination, but rather is circumstantial evidence, and therefore *McDonell Douglas*

provides the correct framework by which to analyze Plaintiffs' claim.[4]  Furthermore, the

County – for the purposes of its motion – does not dispute that Plaintiffs have set forth a

prima facie case for age discrimination under *McDonell Douglas*.  Instead, the County seeks

summary judgment based on the argument that Commissioner Maughan had a legitimate,

nondiscriminatory reason for terminating Plaintiffs: the County alleges that  Plaintiffs

misused County property for personal benefit.   However, a defendant is not entitled to

summary judgment where a plaintiff shows that the stated reason for termination was

pretextual.  *See Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995) (holding that if

a plaintiff "presents evidence that the defendant's proffered reason for the employment

decision was pretextual – i.e. unworthy of belief, the plaintiff can withstand a summary

judgment motion and is entitled to go to trial"); *see also Reeves v. Sanderson Plumbing

Prods., Inc.*, 530 U.S. 133, 147-48 (2000).

"Pretext can be shown by such weaknesses, implausibilities, inconsistencies,

incoherences, or contradictions in the [defendant's] proffered legitimate reasons for its action

that a reasonable factfinder could rationally find them unworthy of credence and hence infer

that the [defendant] did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti,

Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).  Here, Plaintiffs have adduced, and the County

---

[4] Plaintiffs consider a series of ageist comments allegedly made by Commissioner Maughan to be direct evidence of discrimination.  However, such allegations tend only to demonstrate personal bias.  Direct evidence of personal bias does not itself constitute direct evidence of discrimination and *McDonell Douglas* continues to apply in such cases. *See, e.g.*, *Ramsey v. City & Cnty. of Denver*, 907 F.2d 1004, 1008 (10th Cir. 1990) (finding direct evidence of personal bias to constitute circumstantial evidence of age discrimination).

has failed to respond to, evidence that for thirty years the County had a "common practice" of allowing citizens, including County employees, to sign easements permitting the very practice Commissioner Maughan now claims justified terminating Plaintiffs' employment. *See* Coulter Tr., Ex. 16 to Pl.'s County Resp. at 24; Pattillo Tr., Ex. 17 to Pl.'s County Resp. at 16-18; Maughan Dep., Ex. 5 to Pl.'s County Resp. at 92.  Evidence that the County acted contrary to a longstanding common practice of permitting the very behavior now at issue is one such "inconsistency" in its stated reason for termination that could support a showing of pretext.  *See, e..g*, *Kendrick v. Penske Transp. Servs. Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000) (noting that pretext may be shown by demonstrating that the defendant acted contrary to an unwritten policy or practice).  Additionally, Plaintiffs have produced evidence that Commissioner Maughan allegedly made disparaging remarks about older workers, and that he repeatedly made clear his desire to hire younger people.  *See* Dep. of Cyrus Smith ("Smith Dep."), Ex. 11 to Pl.'s County Resp. at 82-83; Dep. of Reginal Coulter ("Coulter Dep."), Ex. 12 to Pl.'s County Resp. at 15-16 .  Although such comments may be insufficient in themselves to support a showing a pretext, *see, e..g Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) (finding that "stray remarks," and "isolated or ambiguous comments are too abstract . . . to support a finding of age discrimination"), when viewed in light of Plaintiffs' evidence that the County acted inconsistently with established prior practice in terminating their employment, the Court finds that a reasonable factfinder could rationally determine that the County's proffered reason for terminating the Plaintiffs was

pretextual.  As such, the County's motion for summary judgment is denied as to Plaintiffs' ADEA claim.[5]

2.  Plaintiffs' *Burk* Claim

The County contends that it is entitled to summary judgment on Plaintiffs' Burk tort claim because "Plaintiffs cannot make out a prima facie case [for] a *Burk* tort claim because Plaintiffs cannot establish causation."  County's Mem. at 11.   A viable *Burk* tort claim must establish: "(1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason that violates an Oklahoma public policy goal (4) that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma and (5) no statutory remedy exists that is adequate to protect the policy goal."  *Kruchowski v. Weyerhaeuser Co.*, 202 P.3d 144, 153 (Okla. 2008).   Notably, the Oklahoma Supreme Court has expressly held that age-discrimination victims may assert a *Burk* tort remedy.  *Id*. at 154.

---

[5]  The County also seeks summary judgment on two particular ADEA issues: (1) the issue of constructive discharge as it relates to Plaintiff Segura's ADEA claim, asserting that he was not constructively discharged and therefore the County is entitled to summary judgment as to his claims; and (2) the issue of mitigation as it relates to Plaintiff Pattillo's claim for damages, asserting that he failed to mitigate and therefore should be precluded from recovering any damages.  However, the Court finds that the County's argument for summary judgment relies on disputed facts and that it has failed to present evidence demonstrating that it is entitled to judgment as a matter of law.  To the contrary, the evidence of record before the Court, when viewed in the light most favorable to Plaintiffs, presents a genuine dispute of material fact as to both issues and the County's motion summary judgment in this regard is denied.  *See, e.g., Strickland v. United Parcel Serv., Inc.*, 555 F.3d 1224, 1229 (10th Cir. 2009) ("The existence of constructive discharge is an issue of fact to be resolved by the jury, and judgment as a matter of law is only appropriate if the evidence is susceptible to but one interpretation.").

Here, the County does not address the individual *Burk* factors in its motion for summary judgment. Instead, it advances the same argument it made as to Plaintiffs' ADEA claim. The Court reads this assertion to mean that the County alleges the employment relationship was not terminated contrary to an Oklahoma public policy goal because the County had a legitimate, non-discriminatory reason for terminating Plaintiffs' employment which was not pretext for age discrimination. However, as discussed *supra* Part III(A)(1) of this Order, the County's contention relies on disputed material facts regarding whether the terminations were actually legitimate or whether they were pretextual. Accordingly, the Court denies the County's motion for summary judgment as to Plaintiffs' *Burk* tort claim.

### B. Defamation

Plaintiffs assert claims for defamation against the County and Maughan individually, alleging that Maughan intentionally "embarked on a sustained public campaign to discredit their good names." Pl.'s Mem. in Resp. to Maughan's Mot. for Summ. J. ["Pl.'s Maughan Resp."] at 23. Both defendants seek summary judgment on this claim. As set forth below, the Court grants summary judgment as to the County, but denies it as to Maughan.

1. Plaintiffs' Claim Against the County

On Plaintiffs' defamation claim against the County, the sole issue before the Court is whether Maughan was acting within the scope of his employment as an Oklahoma County Commissioner when he allegedly defamed Plaintiffs. If he acted within the scope of his employment, then the Oklahoma Government Tort Claims Act ("GTCA") directs that

Plaintiffs may proceed, if at all, only against the County for defamation – Maughan may not be individually liable. *See* OKLA. STAT. tit. 51 § 153 (2012). However, if Maughan's alleged conduct was outside the scope of his employment, the County is immune from liability, but Plaintiffs may proceed against Maughan individually. *Id.*

Under the GTCA, "scope of employment" means "performance by an employee acting in good faith within the duties of the employee's office or employment." OKLA. STAT. tit. 51 § 152(12). Although the question of whether an employee acted within the scope of his employment at any given time is normally a question for the jury, it may be determined as a matter of law when "only one reasonable conclusion can be drawn from the facts." *Nail v. City of Henryetta*, 911 P.2d 914, 918 (Okla. 1996).

Here, Plaintiffs have alleged that Maughan intentionally defamed them so as "to cover [up] his own unlawful actions in discharging Plaintiffs because of their age." Am. Compl. ¶ 49. These are allegations of actual malice, which if true, preclude a finding that Maughan acted in good faith. *See, e.g., Fehring v. State Ins. Fund*, 19 P.3d 276, 283 (Okla. 2001) (finding that when "the tort cause of action sued upon requires proof of an element that necessarily excludes good faith conduct on the part of government employees, there can be no liability against the governmental entity in a GTCA-based suit"); *Parker v. City of Midwest City*, 850 P.2d 1065, 1068 (Okla. 1993) (noting that the element of malice "necessarily include[s] some degree of bad faith"); *McMullen v. City of Del City*, 920 P.2d 528, 531 (Okla. Civ. App. 1996) (finding that it is not possible to maintain a viable GTCA claim against a City for intentional infliction of emotional distress because IIED cannot be

shown if a defendant acted in good faith).[6]  Under the facts presented, the Court determines as a matter of law that Maughan was not acting within the scope of his employment when he allegedly defamed Plaintiffs.  As such, summary judgment is granted to the County on Plaintiffs' defamation claim, but as discussed below, Plaintiffs may proceed against Maughan individually on their theory that he intentionally defamed them to cover up the true reason for their dismissal.

2.  Plaintiffs' Claim Against Maughan

As noted above, Plaintiffs allege that Maughan intentionally "embarked on a sustained public campaign to discredit their good names." Pl.'s Maughan Resp. at 23.  Specifically, Plaintiffs point to two separate occasions where Maughan allegedly published defamatory remarks: first, Plaintiffs contend that Maughan told the Oklahoma County Sheriff's Deputy that Plaintiffs were engaged in "illegal" activity when they were not; and second, that Maughan "repeatedly convey[ed] to the news media that Plaintiffs had engaged in wrongdoing" when they had not.  *Id*. at 24-25. Because the Court has determined that Maughan could not have been acting within the scope of his employment when he allegedly engaged in these acts, Plaintiffs may proceed against him individually for defamation.

_____

[6]  Plaintiffs have neither pled nor subsequently alleged that Maughan's conduct amounted to mere negligence. Am. Compl. ¶ 75 ("Defendant's conduct was wilful and deliberate and/or was in reckless disregard for the rights of others . . ."); *see* Pl.'s Maughan Resp. at 24 n.7 ("Because Plaintiffs have alleged Maughan acted with actual malice, the need to prove negligence is obviated").  Even though it is not necessary to prove actual malice in a defamation suit against a private figure, Plaintiffs nevertheless proceed *solely* on a theory of actual malice.  While this strategy may bolster the allegations in Plaintiffs' ADEA and *Burk* claims, *see supra* Part III(A) of this Order, it precludes a finding of liability against the County on Plaintiffs' defamation claim.

To recover for defamation, a private figure must prove (1) a false and defamatory statement, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of special damage, or the existence of special damage caused by the publication. *See Edwards v. Creoks Mental Health Servs., Inc.*, 505 F. Supp.2d 1080, 1094-95 (N.D. Okla. 2007) (applying Oklahoma law).

Here, Maughan asserts that he is entitled to summary judgment because the Plaintiffs "cannot prove that the statements [he] made . . . were unprivileged or false." Maughan's Mem. in Supp. of its Mot. for Summ. J. ["Maughan's Mem."] at 15. He further alleges that, with respect to the statements made to the media, any information he related about Plaintiffs was consistent with the provisions of the Oklahoma Open Records Act, which require public officials to make available for public inspection certain information, including the "records of [a]ny final disciplinary action resulting in loss of pay, suspension, demotion of position or termination." OKLA. STAT. tit. 51 § 24A.7. Upon review of the parties' submissions, however, the Court finds that Maughan is not entitled to summary judgment on Plaintiffs' defamation claim. A genuine issue of material fact exists regarding the nature and substance of Maughan's comments, and Maughan's bare assertions that Plaintiffs are unable to prove falsity is merely conclusory. Furthermore, Maughan's reliance on the Oklahoma Open Records Act is misplaced. The fact that the disclosure of certain records is mandated by statute is immaterial to whether Maughan intentionally falsified the content of those records in the first place.

17

Accordingly, Maughan's motion for summary judgment as to Plaintiffs' defamation claim is denied.

### C. Intentional Infliction of Emotional Distress Against Maughan

Plaintiffs assert a claim for intentional infliction of emotional distress, alleging that Maughan fired them without cause and then "subject[ed] [them] to public ridicule, detainment, criminal interrogation, and threats of criminal prosecution." Pl.'s Maughan Resp. at 28. Maughan contends that he is entitled to summary judgment because he did not actually charge, detain or interrogate the Plaintiffs. Instead, Maughan asserts that a County Commissioner is without power to institute a criminal investigation and that he merely requested the Oklahoma County Sheriff's Office to investigate a complaint he received concerning allegations of the "misuse of County equipment by County employees." Maughan's Mem. at 11-12.

Oklahoma adopted the tort of intentional infliction of emotional distress, also known as the tort of outrage, in *Breeden v. League Servs. Corp.*, 575 P.2d 1374 (Okla. 1978). The tort is defined by the narrow standards of the Restatement (Second) of Torts § 46, *see Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1558 (10th Cir. 1995), and requires evidence of extreme and outrageous conduct coupled with severe emotional distress. *Gaylord Entertainment Co. v. Thompson*, 958 P.2d 128, 145 (Okla. 1998). To prevail on a claim for intentional infliction of emotional distress, a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's

conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Computer Publications, Inc. V. Welton*, 49 P.3d 732, 735 (Okla. 2002); *see Daemi v. Church's Fried Chicken, Inc.*, 931 F.2d 1379, 1387 (10th Cir. 1991) (applying Oklahoma law). The trial court acts as a gatekeeper regarding the outrageousness of the defendant's conduct and the severity of the plaintiff's distress. *Miller v. Miller*, 956 P.2d 887, 901 (Okla. 1998).

Here, Plaintiffs' allegations concerning unlawful detainment, criminal interrogation, and threats of criminal prosecution do not support a claim of intentional infliction of emotional distress because, *inter alia*, they are not attributable to Maughan. To the extent that Plaintiffs allege mistreatment during the course of the Oklahoma County Sheriff's Office investigation, their complaint is with the Sheriff and not Maughan. Nothing in the record indicates that Maughan has the power or authority to direct an investigation by the Oklahoma County Sheriff's Office. Upon review of Plaintiffs' remaining allegations[7], the Court finds that, as a matter of law, the record does not support a claim for intentional infliction of emotional distress. Even when viewed in the light most favorable to the Plaintiffs, the conduct complained of, though allegedly intentional, is not "so outrageous in character and

---

[7] Plaintiffs' remaining allegations in support of their intentional infliction of emotional distress claim are as follows: (1) that Plaintiffs were discharged without cause; and (2) that the Defendant knowingly or negligently engaged in baseless accusations that Plaintiffs had engaged in illegal activity. However, neither argument supports such a claim. The mere discharge of an at-will employee does not constitute extreme or outrageous behavior. *See, e.g.*, Beck v. Phillips Colleges, Inc., 883 P.2d 1283, 1286 (Okla. Civ. App. 1994). And while allegedly engaging in lies about the legality of another's conduct may support a claim for defamation, *see supra* Part III (B) of this Order, it is not actionable – without more – as a claim for intentional infliction of emotional distress.

so extreme in degree as to go beyond all possible bounds of decency" so as to sustain an intentional infliction claim under Oklahoma law. *See  Computer Publications, Inc.*, 49 P.3d at 735.   Additionally, "an action for intentional infliction of emotional distress will lie only where there is extreme and outrageous conduct coupled with severe emotional distress." *Brock v. Thompson*, 948 P.2d 279, 294-95 (Okla. 1997).   Regarding the latter element, the Court finds Plaintiffs' proof insufficient to create a genuine issue of material fact regarding the severity of the distress allegedly suffered as a result of Maughan's purported misconduct. Thus, the Court grants Maughan's motion for summary judgment as to Plaintiffs' claim for intentional infliction of emotional distress.

### D.  Civil Conspiracy

In the First Amended Complaint, Plaintiffs allege that "Commissioner Maughan, Chief Deputy Satterwhite, and HR Director Matthews . . . conspir[ed] together . . . to unlawfully discharge, defame, inflict severe emotional distress upon, and violate the constitutional rights of Plaintiffs."  Am. Compl. ¶ 82.   Subsequently, Plaintiffs dismissed their claims against Satterwhite and Matthews [Dkt. # 81].   Maughan now seeks summary judgment on Plaintiffs' civil conspiracy claim, asserting that he acted "alone in his decision to terminate the employment relationship of the eight Plaintiffs."   Maughan's Mem. at 8. Plaintiffs fail to address Maughan's argument for summary judgment on this claim, and it is proper for the Court to construe this failure as a concession.  *See, e.g. Thompson v. Ind. Sch. Dist. No. I-1 of Stephens Cnty.*, No. CIV-12-13-M, 2012 WL 1110171, at *3, (W.D. Okla.

Apr. 3, 2012) (treating a plaintiff's failure to address arguments raised by the defendant in a dispositive motion as conceded).

Accordingly, the Court grants Maughan's motion for summary judgment as to Plaintiffs' civil conspiracy claim.

## IV. Conclusion

For the foregoing reasons, the Court finds that the County is entitled to summary judgment on Plaintiffs' defamation claim, but that it is not entitled to summary judgment on either the ADEA or *Burk* tort claim.  The Court also finds that Maughan is entitled to summary judgment on Plaintiffs' claims for intentional infliction of emotional distress and civil conspiracy, but that a genuine issue of material fact exists as to the defamation claim, precluding summary judgment.  Accordingly, Plaintiffs' ADEA claim (Count I) and *Burk* tort claim (Count II) will proceed against the County, and Plaintiffs' defamation claim (Count IV) will proceed against Maughan.

IT IS THEREFORE ORDERED that Defendants'  Motions for Summary Judgment [Dkt. # 88, 89] are GRANTED in part and DENIED in part, as set forth herein.

IT IS SO ORDERED this 25th day of October, 2012.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE